# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACQUELINE BROWN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, [1] Acting )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-16-517-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further administrative findings.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

Plaintiff's application for supplemental security income was denied initially and on reconsideration. Following two hearings, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 11-20). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.9520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 30, 2012, the application date. (TR. 13). At step two, the ALJ determined Ms. Brown had the following severe impairments: cervical stenosis and degenerative disc disease of the neck, chronic low back pain, chronic shoulder pain, and polysubstance abuse in remission. (TR. 13). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 14).

At step four, the ALJ found that Plaintiff had no past relevant work. (TR. 19). The ALJ further concluded that Ms. Brown had the residual functional capacity (RFC) to:

> [P]erform less than a full range of light work as defined in 20 C.F.R. 404.1567(b). The claimant can lift 20 pounds on an occasional basis and 10 pounds on a frequent basis. The claimant can stand/walk six hours

out of an eight-hour workday; and sit six hours out of an eight-hour workday. The claimant cannot engage in crawling. The claimant can engage in occasional overhead reaching and occasional fingering with the non-dominant right hand.

(TR. 14).

Based on the finding that Ms. Brown had no past relevant work, the ALJ proceeded to step five. There, he presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 46-47). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 47). The ALJ adopted the testimony of the VE and concluded that Ms. Brown was not disabled based on her ability to perform the identified jobs. (TR. 20).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in: (1) evaluating the opinion from a treating physician and (2) the credibility analysis.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither

reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR IN THE EVALUATION OF A TREATING PHYSICIAN'S OPINION

As alleged by Ms. Brown, the ALJ committed legal error in considering the opinion from treating physician, Dr. Mark Winchester.

### A. ALJ's Duty in Evaluating a Treating Physician's Opinion

An ALJ's evaluation of a treating physician's opinion is sequential. First, the ALJ must determine whether a treating physician's opinion is entitled to "controlling weight." *Krausner v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In doing so, the ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96–2p, at *2 (July 2, 1996) (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* If the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.*

If the ALJ declines to give the treating physician's opinion "controlling weight," the ALJ must examine particular factors and explain the amount of weight assigned. *See* SSR 96–2p, at *5. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4)

4

consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue*, 638 F.3d at 1330, 20 C.F.R § 416.927. Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p, at *5.

If the ALJ rejects the opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### B.    Dr. Winchester's Opinion

Dr. Winchester treated Plaintiff from September 2013 to March of 2014. (TR. 348-352, 357-359). On September 8, 2013, Dr. Winchester completed a Medical Source Opinion of Residual Functional Capacity form for Ms. Brown. There, Dr. Winchester opined that Ms. Brown could:

- stand and/or walk for less than two hours;

- frequently lift and/or carry less than 10 pounds;

- reach, push, and pull with both upper extremities for less than two hours; and

- grasp, handle, finger, or feel with both hands for less than two hours.

(TR. 348, Exhibit 11F). Dr. Winchester based these opinions on: (1) diagnoses that Ms. Brown suffered from degenerative disc disease and spinal stenosis and (2) additional findings that Plaintiff had leg weakness and abnormal reflexes. (TR. 348).

The ALJ acknowledged Dr. Winchester's opinion, but then effectively rejected it, stating:

> The findings of Dr. Winchester regarding the claimant's physical limitations are far in excess of what is supported by the record. The Administrative Law Judge therefore assigns little weight to the conclusions of Dr. Winchester in Exhibit 11F.

(TR. 17).

### C. Error in the Consideration of Dr. Winchester's Opinion

As stated, the initial determination the ALJ must make is whether the treating physician's medical opinion "is to be accorded 'controlling weight,' on the matter to which it relates." *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011). To make this determination, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003) (quotations omitted); *see also* § 416.927(d)(2).

Here, the ALJ obviously declined controlling weight to Dr. Winchester's opinion, instead affording the opinion "little weight." (TR. 17). But the ALJ did not state whether

Dr. Winchester's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or whether the opinion was consistent with other substantial evidence in the record. A finding at this stage was necessary, especially because Dr. Winchester's opinion was: (1) supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with other substantial evidence in the record. See Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003) ("In this case, the ALJ obviously did not give Dr. Rowland's opinion controlling weight, but he did not articulate a reason. A finding at this stage ... is necessary so that we can properly review the ALJ's determination on appeal").

First, Dr. Winchester referenced an MRI in his treatment notes which revealed "degenerative changes with bulging discs, most pronounced at C5-C6 with protruding disc lateralizing to the right." (TR. 352, 369). These findings are consistent with Dr. Winchester's opinion concerning Ms. Brown's functional limitations which the ALJ had disregarded.

Second, Dr. Winchester's findings are consistent with other substantial evidence in the record, including:

- a March 2010 MRI which showed bulging discs with spondylitic and discogenic changes which contributed to moderate to severe neural foraminal stenosis;

- July 2010 findings from examining physician Dr. Bill Buffington that Plaintiff had reduced external and internal rotation in her right shoulder, reduced flexion of her cervical spine, pain with flexion, extension and rotation in her cervical spine, an inability to manipulate small objects with her non-dominant right hand, and an inability to grasp tools such as a hammer;

7

- June 2012 findings from consultative examiner Dr. Robin Hall that Plaintiff had reduced extension and flexion in her back, and reduced extension and flexion of her cervical spine, and pain with flexion and extension in her cervical spine;

- June 2012 findings from treating physician Dr. Joshi Bharat that Ms. Brown suffered from a "Neck Disorder," not otherwise specified;

- a December 2012 opinion from Dr. Catherine White which diagnosed Plaintiff with an acquired deformity of back or spine and referred her to an orthopedic surgeon;

- a May 2013 Medical Source Opinion of Residual Functional Capacity completed by Certified Physician Assistant Anita Tanner, which made findings that Ms. Brown suffered from leg weakness, abnormal reflexes, ulnar nerve distribution numbness, and also cited the 2012 MRI findings which showed degenerative disc disease and stenosis;

- May 2013 treatment notes from Ms. Tanner which diagnosed muscle spasm, lower back pain, and acquired deformity of back or spine; and

- Dr. Winchester's own treatment notes from September 2013 through March 2014 which diagnosed degenerative disc disease and scoliosis.

(TR. 297-298, 305-307, 309, 319, 322, 333, 339, 346, 350, 352, 359).

Even though the ALJ decided to decline controlling weight to Dr. Winchester's opinion, the opinion was "still entitled to deference and must be weighed using all of the [relevant] factors." *Watkins*, 350 F.3d at 1300. (quotation omitted); *see* SSR 96-2p, at *4) ("[A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."). Although the ALJ stated that he gave the ALJ's opinion "little weight," he actually outright rejected Dr. Winchester's opinion, as the RFC does not

reflect any of Dr. Winchester's opinions regarding Plaintiff's functional abilities. *Compare* TR. 14 (RFC) *with* TR. 348 (Dr. Winchester's opinion).

When an ALJ completely rejects a treating physician's opinion, he must provide "specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1300. Here, however, the ALJ's only stated reason for rejecting Dr. Winchester's opinion was that it was "far in excess of what [wa]s supported by the record." (TR. 17). Other than that statement, the ALJ does not explain how he believed Dr. Winchester's opinion "far exceeded" those offered by other medical professionals. *See* TR. 17. Indeed, as evidenced by the recitation of medical evidence above, Dr. Winchester's opinion was supported by other record evidence, not in excess of it.

If the ALJ believed that Dr. Winchester's opinion was in "far excess" of what was otherwise supported by the record, the ALJ should have cited specific examples or pointed to evidence in the record which would have validated a disregard for Dr. Winchester's opinion. In the decision, the ALJ cited the 2010 MRI and the opinions from Drs. Buffington, Bharat, and White, but he made no findings as to whether he believed the opinions or what weight he accorded them. *See* TR. 14-16. The ALJ relied on Dr. Hall's opinion, by way of according "great weight" to the opinion of State Agency consultative examiner Dr. Luther Woodcock who, in turn, relied on the opinion of Dr. Hall. *See* TR. 15-16, 313-319. But Dr. Hall's findings of reduced extension and flexion in her back and neck, with pain, reduced flexion of her cervical spine, and pain with flexion and extension in her cervical spine would support Dr. Winchester's opinion who made similar findings. *See* TR. 348, 350, 351, 352, 359. Finally, the ALJ dismissed Ms.

9

Tanner's opinion, stating that it was inconsistent with the credible evidence of record. (TR. 16). But the ALJ failed to state with what evidence Ms. Tanner's opinion was inconsistent or otherwise expound on this rationale. Ms. Tanner's opinion mirrored that offered by Dr. Winchester. *Compare* TR. 333 *with* TR. 348. And as discussed, Dr. Winchester's opinion was fully supported by the record. *See supra*.

In evaluating Dr. Winchester's opinion, the ALJ stated only that the opinion was "far in excess of what is supported by the record." (TR. 17). But because the ALJ failed to explain or identify: (1) what the claimed inconsistencies were between Dr. Winchester's opinion and the other substantial evidence in the record or (2) how Dr. Winchester's opinion "far exceeded" other opinions, the ALJ's reason for rejecting that opinion is not "sufficiently specific" to enable this court to meaningfully review his findings. *Watkins,* 350 F.3d at 1300 (quotation omitted). Additionally, without further clarification, the reason given by the ALJ for not giving Dr. Winchester's opinion controlling weight or any lesser weight does not appear to have been supported by substantial evidence. As a result, remand is warranted for re-evaluation of Dr. Winchester's opinion.

## VI.  ERROR IN THE CREDIBILITY ANALYSIS

As alleged by Ms. Brown, the ALJ's credibility determination lacked substantial evidence.

### A.  The Administrative Law Judge's Duty in Assessing Credibility

As part of the disability determination, the ALJ had to consider the evidence and decide whether he believed Ms. Brown's subjective complaints. *See* SSR 96-7p, at *1-

10

2 (July 2, 1996). In doing so, the ALJ had a duty to make specific findings and link them to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (noting the duty to "closely and affirmatively link[ ]" credibility findings to substantial evidence); SSR 96-7p, at *4 (noting the duty to provide "specific reasons for the weight given to the individual's statements" "articulated in the determination or decision" in a manner "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight" given "to the individual's statements and the reasons for that weight").

Besides objective evidence, the ALJ may consider certain factors in evaluating a claimant's credibility, including:

- The individual's daily activities;

- The location, duration, frequency, and intensity of the individual's pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

- Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

- Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at 3; *Keyes-Zachary*, 695 F.3d 1156, 1167 (10th Cir. 2012). However, "an ALJ is not required to address each factor in his decision." *Duncan v. Colvin*, 608 Fed Appx. 566, 578 (10th Cir. 2015).

### B. Plaintiff's Allegations of Pain and Related Limitations

At the hearing, Ms. Brown testified that she had: (1) constant daily pain in her neck which radiated into her shoulders, (2) pain in her middle spine area, (3) difficulty holding on to things, (4) constant numbness in three fingers on each hand, and (5) constant numbness in the sides of her thighs. (TR. 62-63, 64-65, 72). According to Plaintiff, these impairments caused difficulties in her ability to sit, stand, walk, and lift. (TR. 62-63). Specifically, Plaintiff stated that she could: (1) lift no more than 5 pounds, (2) walk for about 5-10 minutes at one time, (3) stand for about 5-10 minutes at one time, and (4) sit for about 10-15 minutes at one time. (TR. 62-63). Plaintiff also testified that her fingers "lock up" and get stuck which causes pain. (TR. 64).

Ms. Brown also testified that her physical impairments limited her daily activities. For example, Plaintiff stated that some mornings she was unable to hold a hair dryer above her head. (TR. 62). She also stated they she and her fiancé cooked together, but sometimes the cooking pan was too heavy for her to lift and her fiancé would have to reach things on high shelves because she could not reach overhead. (TR. 66). Ms. Brown stated that her fiancé did the sweeping, vacuuming and general housekeeping and she was limited to doing only light feather dusting. (TR. 66). Plaintiff stated she was unable to take out trash or to do laundry because it was too heavy and hard for her to lift the laundry soap or laundry basket. (TR. 66-67). Ms. Brown stated that she

shopped for groceries, but needed help with that chore from her fiancé. (TR. 67). Plaintiff stated that she played on the computer some, but not for long because of her inability to use the mouse for long. (TR. 67). Plaintiff testified she did some crafts and went to church, but she had difficulty standing and sitting in church. (TR. 69).

**C.    Error in the ALJ's Credibility Determination**

In evaluating Plaintiff's credibility, the ALJ stated:

The Administrative Law Judge finds that the claimant suffers from medically determinable impairments which could reasonably be expected to cause the pain and discomfort which the claimant alleges. The Administrative Law Judge however, finds that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible[.]

(TR. 18). The ALJ then listed 9 reasons to discount Ms. Brown's credibility:

1. A lack of gastrointestinal, respiratory, neurological, or cardiac impairment;

2. Findings from Dr. Buffington that Plaintiff had full range of motion in the lumbar spine and hips, no neurological deficits, normal speech, and some decreased neck flexion, but full range of motion in all other joints;

3. Findings from Dr. Hall that Plaintiff had intelligible speech, no hearing deficits, normal thought processes and vision, clear lungs, regular heart rate, no sensory deficient or edema, clubbing, or cyanosis, normal hand skills and tactile manipulation of objects, safe and stable gait without assistive devices;

4. Findings from Dr. Bharat that Plaintiff had no arm or leg weakness, no problems walking, and no past hospitalizations;

5. Findings from Dr. Woodcock that Ms. Brown could perform light work with limitations in her ability to reach, but with no visual, communicative, postural, or environmental limitations;

6. Plaintiff's ability to perform personal care items, prepare meals for herself and her fiancé, do light housekeeping, drive a car and do grocery

13

> shopping, use the computer, do crafts, and socialize on the computer and phone and at church;
>
> 7. Plaintiff's statement that she was able to walk one-half mile without rest;
>
> 8. Plaintiff's admission that in December 2012, she had used crack cocaine and methamphetamines within the past year; and
>
> 9. Plaintiff's statement that when she is active, her pain and discomfort is lessened.

(TR. 18). In sum, the ALJ stated:

> [Plaintiff's] impairments and their associated symptoms do not preclude all work activity. The record shows some decreased back extension and flexion and decreased neck extension and flexion, but full range of motion in all other joints. The claimant's gait is safe and normal without the use of assistive devices. The claimant has a recent history of use of methamphetamine and crack cocaine. She has stated that she feels better when she is more active. The claimant's impairments, although limiting, do not support a conclusion that the claimant is unable to engage in all work activity.

(TR. 19).

Ms. Brown alleges that several of the rationales cited by the ALJ lack support in the record, rendering the credibility analysis as a whole lacking in substantial evidence. Specifically, Plaintiff argues the ALJ: (1) improperly relied on medical evidence not related to her alleged impairments, (2) improperly relied on past drug use to discount her credibility, (3) omitted evidence related to Plaintiff's functional abilities and daily activities, and (4) failed to consider Plaintiff's attempts to seek medical care and her use of prescription medication. (ECF No. 16:8-10). The Court agrees with Ms. Brown and concludes that the credibility analysis lacks substantial evidence.

14

First, Plaintiff alleges that the ALJ improperly relied on evidence not related to Plaintiff's alleged impairments to discount her credibility. (ECF No. 16:8). For example, in rationales 1-5, the ALJ relied on:

1. A lack of gastrointestinal, respiratory, neurological, or cardiac impairment;

2. Findings from Dr. Buffington that Plaintiff had full range of motion in the lumbar spine and hips, no neurological deficits, normal speech;

3. Findings from Dr. Hall that Plaintiff had intelligible speech, no hearing deficits, normal thought processes and vision, clear lungs, regular heart rate, no sensory deficient or edema, clubbing, or cyanosis;

4. Findings from Dr. Bharat that Plaintiff had no arm or leg weakness, no problems walking, and no past hospitalizations; and

5. Findings from Dr. Woodcock that Ms. Brown had no visual, communicative, postural, or environmental limitations.

(TR. 18). As noted by Plaintiff, her impairments related to functional limitations and pain in her neck and back. Thus, the ALJ's findings regarding areas that Plaintiff did not allege disability would not be relevant to her claims of neck and back pain. *See Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) ("[T]he purpose of a credibility analysis is to assess the credibility of the claimant's allegations of impairment.").

Second, Plaintiff alleges that the ALJ selectively relied on and mischaracterized her activities of daily living. (ECF No. 16:8-9). According to the ALJ, Ms. Brown was able to perform personal care items, prepare meals for herself and her fiancé, do light housekeeping, drive a car and do grocery shopping, use the computer, do crafts, and socialize on the phone and at church. (TR. 18). It appears as though the ALJ garnered

15

this information from functional reports from Ms. Brown dated May 17, 2012 and October 31, 2012. *See* TR. 249-256, 267-75. But the ALJ misrepresented the information in the functional reports, omitting critical details. Additionally, at the September 20, 2013 hearing, Ms. Brown testified regarding her abilities in these areas which contradicted the ALJ's findings.

First, in the functional reports, Ms. Brown listed multiple problems in the area of "personal care items," including difficulty putting on shirts, getting out of the tub, holding a hair dryer, washing her hair, putting on makeup, and holding utensils. (TR. 250, 268). As far as preparing meals for herself, Plaintiff wrote that she mainly ate prepared meals, was able to microwave meals, and that she was unable to cut foods without her hands cramping. (TR. 251, 269). Regarding housekeeping, Plaintiff stated that she did "very limited cleaning," could not lift laundry, and needed help moving furniture, lifting things, washing pans, doing laundry, and cleaning floors. (TR. 251, 269). In the May 17, 2012 report, Plaintiff stated that she drove, but in the October 31, 2012 report, she stated that she did not drive, because she had no driver's license. (TR. 252, 270).

Second, at the September 20, 2013 hearing, Ms. Brown testified:

- she is sometimes unable to hold a hair dryer,

- she is unable to prepare meals by herself, that she and her fiancé do that together because she is sometimes unable to lift pans or reach overhead for items on an upper shelf,

- her fiancé does the vacuuming, sweeping, take out the trash, laundry and general housekeeping and that her housekeeping is limited to dusting with a feather duster,

- she is unable to go grocery shopping by herself, and that her fiancé helps her,

- her use on the computer is limited because she is unable to use a mouse for very long, and

- although she does attend church, she has difficulty with sitting and standing while there.

(TR. 62, 66, 67).

As noted by Plaintiff, the ALJ's reliance on her ability to perform certain daily activities is not entirely accurate, as it omits details related to Plaintiff's abilities in these areas. In *Sitsler v. Astrue*, 410 F. App'x 112 (10th Cir. 2011), the Tenth Circuit Court of Appeals held that this type of selective and misleading review of Plaintiff's daily activities is impermissible. In *Sitsler*, the claimant argued that the ALJ mischaracterized the extent of his daily activities, ignoring particular qualifications and limitations. *Sitsler*, 410 F. App'x at 117. In discounting the plaintiff's credibility, the ALJ relied on the plaintiff's activities of daily living, stating that he could care for his personal needs, care for his small children, perform household chores, drive, and go shopping. *Id.* at 114. In contrast, however, the record actually reflected that the claimant had to have help in caring for his children, he only made simple meals, his ability to perform household chores was limited to a few minutes, his shopping was limited, and he drove very little. *Id.* at 117. Noting that the ALJ's analysis was "selective and misleading," the Court stated that "an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations." *Id.*; *see Talbot v. Heckler,* 814 F.2d

1456, 1462, 1464 (10th Cir. 1987) (noting that the ALJ improperly based his conclusion that claimant could do light work on a mischaracterization of his activities).

As in *Sitsler,* the ALJ here mischaracterized the extent of Ms. Brown's daily activities, ignoring the numerous qualifications and limitations to which she reported and testified. Thus, the Court concludes that the ALJ's evaluation of plaintiff's credibility was flawed by his selective and misleading review of the evidence.

Third, although not specifically challenged by Plaintiff, the ALJ cited Plaintiff's ability to walk one-half mile without resting. (TR. 18). Plaintiff made this statement in in the May 17, 2012 functional report. (TR. 254). But in the October 31, 2012 report and later at the hearing, she stated that she could only walk 5-10 minutes before stopping. (TR. 62-63, 272).

Fourth, the ALJ relies on a statement made by Plaintiff in December 2012 that she had admitted to using crack cocaine and methamphetamine within the last year. (TR. 18). However, in relying on this reason, the ALJ failed to explain how he concluded that past substance abuse justified a finding that Plaintiff was not credible. The ALJ's decision appears to assume that the mere fact of substance abuse indicates a propensity to exaggerate or to lie about the severity of symptoms. But "[t]his conclusion does not inevitably follow from the fact of substance abuse, and the decision does not explain what facts in this record support the conclusion that plaintiff's supposed substance abuse makes it more likely her allegations are not credible." *Cann v. Astrue*, 2009 WL 536565, at *5 (D. Kan. Mar. 3, 2009).

Finally, Plaintiff alleges that the ALJ failed to consider her use of prescription pain medication when evaluating her credibility. (ECF No. 16: 10). The ALJ noted that "there is no indication that claimant experiences the side effects of medication which significantly diminishes her residual functional capacity." (TR. 18). Even so, the ALJ failed to acknowledge Ms. Brown's use of pain medication, which can bolster credibility by showing that a claimant is willing to seek relief for her impairments. *See Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1167 (10th Cir. 2012).

In sum, the Court concludes that substantial evidence does not support the majority of the reasons given by the ALJ to discount Ms. Brown's credibility.

> Because a credibility assessment requires consideration of all the factors "in combination," [ ] when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, [a court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.

*Bakalarski v. Apfel,* 1997 WL 748653, *3 (10th Cir. 1997) (emphasis in original). Accordingly, remand is necessary for the Commissioner to properly evaluate Plaintiff's credibility.

## VII. SUMMARY

In sum, the Court concludes that the ALJ erred in his evaluation of Dr. Winchester's opinion and in assessing Plaintiff's credibility. As a result, remand is warranted.

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the case for further administrative findings.

ENTERED on February 15, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE